## LOTT v. AMERICAN SURETY CO. OF NEW YORK.

### No. 10990.

Court of Civil Appeals of Texas. Galveston.

May 16, 1940.

Rehearing Denied June 6, 1940.

Allen, Helm & Jacobs, S. M. Helm, and G. E. Pike, all of Houston, for appellant.

A. D. Dyess, of Houston (Chester H. Johnson, of Houston, of counsel), for appellee.

GRAVES, Justice.

Appellant was plaintiff below, appellee defendant; this statement, admitted to be substantially correct, is taken from the former's brief:

"Plaintiff, in appealing from an award of the Industrial Accident Board after both plaintiff and defendant duly gave notice of their dissatisfaction therewith, duly filed this suit against defendant on March 17, 1939, in the district court of Harris County, Texas, to set aside said award and to recover his workmen's compensation from defendant as the workmen's compensation insurance carrier for plaintiff's employer, Phoenix Engineering Corporation, a subscriber under the Workmen's Compensation Act. Plaintiff pleaded accidental and general injuries hereinafter more fully set

out, sustained by him as an employee of Phoenix Engineering Corporation, engaged in the usual course of his employment in Harris County, Texas, on August 2, 1938, in having a supporting form and reinforced steel wall fall upon his back as he performed his journeyman carpenter duties in the erection of a large addition to one of the Houston Lighting & Power Company plants, as a result whereof he was totally and permanently disabled to work and earn money; or, alternatively, he was totally disabled for 400 weeks after the date of accident, and after the termination of total disability would be partially disabled to an extent of 90% in excess of 300 weeks, entitling plaintiff to the maximum compensation, or such portion thereof as the jury might find based upon an average daily wage of $9. Alleged alternatively under all three methods of computation of average weekly wage set out by the Workmen's Compensation Act.

"Plaintiff further pleaded facts justifying lump-sum payment, for which he also prayed.

"Defendant filed an unsworn answer, consisting only of a general demurrer, which was neither presented, urged, nor ruled upon, and a general denial.

"This cause came on to be tried before a jury before the Sixty-First Judicial District Court in Harris County, Texas, on the 5th day of June, 1939, and after the plaintiff rested his primary case on June 6, 1939, and before defendant had offered any evidence, the Court, after argument of counsel and over plaintiff's objection, granted defendant's motion to instruct the jury peremptorily to return a verdict against the plaintiff for the defendant, to which plaintiff excepted in open court.

"Pursuant to the Court's instruction, the jury so returned its verdict, and the Court on the 7th day of June, 1939, rendered judgment thereon that plaintiff take nothing and defendant go hence without · day and recover its costs, to which ·action of the Court in entering such judgment, the plaintiff then and there in open court duly excepted."

The single question of law the appeal presents is whether, under the evidence adduced in appellant's behalf, there was an issue of fact raised over any material feature of the cause-of-action he so declared upon; and that inquiry is determinable upon this principle:

■ "The settled rule is that a verdict should not be directed for defendant, 'if, discarding all adverse evidence and giving credit to all evidence favorable to the plaintiff and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found for the plaintiff.' Hence, a direction of verdict for defendant is error if on the plaintiff's pleadings and evidence any issue arises that the jury might properly determine in favor of plaintiff, or if on any aspect of the case made, plaintiff is entitled to recover." 41 Tex.Jur., page 949, paragraph 177, and foot-note cited authorities.

■ Essentially that same rule, applied in a compensation case like the one at bar, but dealing with the sufficiency of the evidence to support a verdict, rather than to raise an issue, where a somewhat stronger proof is required, is thus stated:

"Where it can reasonably be inferred from the evidence that the plaintiff's injuries are permanent and totally disable him from performing the usual tasks of a workman in such way as to enable him to procure and retain employment, a verdict in his favor on the issues of total permanent incapacity will be affirmed. * * * A similar rule obtains in respect of the sufficiency of the evidence to establish partial disability.

■ "The issue as to disability may be established by the testimony of the claimant alone, even though such testimony is contradicted by medical witnesses." 45 Tex. Jur., pages 592, 593, paragraph 163, and cited authorities.

When the evidence here is appraised in the light of these principles, bearing in mind the while that it takes—as just indicated—less evidence to merely raise an issue than to support a verdict, it seems clear an issue of fact was raised over whether or not the appellant was either totally and permanently, or totally for a time and thereafter partially, disabled, as so pled by him.

He himself thus makes what is deemed—with only immaterial editing added—a sufficient resume of that evidence in his brief, much of it consisting of his own testimony :.

"On August 2, 1938, while plaintiff was working as journeyman-carpenter for Phoenix Engineering Corporation, in the City of Houston, a supporting form there-

for and a reinforced steel wall fell upon him. His backbone and ribs were injured; and he was injured inside, to what extent he didn't know but so as to not be able to breathe. He couldn't bend reasonably, and his entire back was affected. His head and his right leg were also affected. He stayed under the treatment of Dr. J. T. Oliver, of Parkview Hospital, until October 24, and then Dr. B. D. Thompson treated him regularly from October 26 until the date of this trial for back injury and nerve condition. Dr. Oliver told him he had two broken ribs and an injured backbone. He noticed a change in his nerves, at times a lot for the better after Dr. Thompson treated him, and his back got better; the sharp pains left but 'that grind' remained. He thought it was out of place. 'It feels like it is twisted out of place. I am in constant misery all the time, and in pain.' 'I know I can't get out and lift and I don't try it.' 'I have not been where I could bend, and the minute I even get the start of bending, the muscles will contract and I am in pain. My back never got stiff where I couldn't bend, but I can't breath when I bend.' The pain 'has affected my ability to work, the weakening of my back, I am not able to lift anything, except under a physical and mental strain.'

"The duties of a journeyman-carpenter are unlimited, especially when pertaining to weight and the strength required. They have to handle heavy timbers, heavy steel, heavy trusses, and all kinds of heavy work going into a building. They are subject to having to handle any of it. He couldn't let other carpenters on the job do that and expect to get paid. Each man is supposed to do his full share. They have to use a hammer, saw; plane, screw-drivers, and a number of other tools. When he tried to do this kind of work since his injury, two days one week and two and one-half days another, he had very little success. 'I was knocked out when I would get home of evenings. * * * If you ever saw a dog with a broken back, that is the way I do, it just quivers. I did some work, but I couldn't hold the job.' He had been paid 28 weeks compensation, and after he had asked Phoenix Engineering Corporation if they had a place for him and what they wanted to do about it, 'I went and told them I had been cut off of my compensation and I would like to go to work on something to make a living.' He did not tell them he was capable of going to work. He quit

working at the Austin Construction Company, where he worked the 4½ days above mentioned, 'because they didn't have any place for me.' He worked on the Sears & Roebuck Building, lacking a half day of being a full week as journeyman-carpenter, and the next week got the job of carpenter-foreman at $11.00 a day. He was holding down the job there 'for the time being' at the time of this trial. As a carpenter-foreman he didn't do hard physical manual labor; he used no tools but ruler and tape and square. The heaviest work he does is walk covering the job. As to a foreman being required to do the labor a journey-man-carpenter has to do, he answered: 'On the job I am on, you are not.' The foreman job was temporary, paid by the hour, not permanent. 'When I went to work on it, I was not able physically to do the work, from personal feeling, because I am in constant misery all the time, and in pain. I know I can't get out and lift, and I don't try it.'

"He had been a carpenter-foreman only four times in his 27 years carpentering. He was formerly a competent finishing-carpenter, but hadn't done it for 10–12 years, and was not now competent for lack of practice. He principally does rough carpenter work, building forms, and things of that kind. He finished only 7th grade schooling. He was not qualified by training or experience to do office work, clerical work, and work of that kind and character.

"Dr. B. D. Thompson testified the plaintiff came to him complaining with severe pain in the lumbar portion of his back, and of trouble with stomach and indigestion. 'He had very definite pain or pressure over the first, second, and third lumbar portion of his spine.' The doctor examined him and treated him regularly. He gave a history of a large heavy wall falling on his back across the lumbar portion of his spine. 'He couldn't bend forward freely. If he did bend forward, he couldn't come up quickly without pain.' In his opinion the man had injury to the vertebrae in that region, and to the ligaments that hold the vertebrae together, and to the spinal cord itself, affecting the sympathetic nerves that come off the spine at that point, and manifesting itself in pain over stomach, pain down his side into abdomen, daily stomach gas and indigestion. 'In my opinion, those ligaments (in lumbar back) were torn, and that accounts for that definite

soreness over that region today * * *. In my opinion those ligaments have not healed.'

"As of the time of trial Lott was not able to do hard physical manual labor, although he might do some very light work not requiring stooping or bending of his back. It would have to be in the category of very light work. Based solely on examination and treatment, the doctor's opinion was that he never would be able to do hard manual labor that requires him to lift heavy objects, or bend and stoop around in different positions, but would be able to do light labor, if he could get a job where he didn't have anything heavy to do during the day."

The appellee's sole answering position is thus, in substance, quoted from its brief:

"Due to the admissions of plaintiff that he immediately went back to work after the compensation had been cut off and at the same rate of pay and on the same job, and shortly thereafter secured another job on which he remained at the same rate of pay for about a week when he got a promotion as carpenter-foreman, drawing $11.00 a day and doing the very kind of work he is fitted for, certainly the plaintiff could not be totally disabled nor totally and permanently disabled so that he could not procure and retain employment, and further because plaintiff's position is not supported by any competent medical evidence produced upon the trial of his case, because Dr. Thompson's entire testimony and opinions were based upon the history of claimant's injury as given to the doctor by the claimant and upon external physical examination for internal injury to plaintiff's sciatic nerve and back and upon purely subjective symptoms and without the benefit of X-ray."

■■ Obviously, it is thought, these objections merely go to the weight, credibility, and possibly in some details to the admissibility, of the testimony referred to supra, rather than to any structural or legal insufficiency of it to raise an issue-of-fact for the jury. The question here is, not whether this summarized evidence in appellant's behalf was true, weak, free of conflict, or even self-contradictory in some respects, but whether, after discarding all that was adverse or contradictory, and then giving credit to all that was favorable under every reasonable intendment, there was still left sufficient basis for a not unjustified inference by a jury that the appellant's resulting incapacity from the injury he so suffered was in either respect as claimed by him; neither did the admitted facts that the appellant had already received the 28 weeks' compensation at the maximum rate of $20 per week as a result of such injury, and that he had also received the same or larger temporary wages than he got before his injury, defeat, as a matter of law, his suit herein for the further claimed incapacity; the test at last still being whether his physical condition was so impaired by the injury, either totally and permanently, or totally for a time and thereafter partially, that he was left unable to secure and hold employment in the usual task of such a workman, in whole or in part; Lawler's "Texas Workmens' Compensation Law", paragraphs 106, 107, pp. 225–228; inclusive, and cited authorities.

These authorities, without deeming it essential that they be commented upon in detail, are thought to support the conclusions stated; if so, the peremptory instruction was improvidently given: Traders & General Ins. Co. v. Daniel, Tex.Civ.App., 131 S.W.2d 276; Davies v. Texas Employers' Ins. Ass'n, Tex.Com.App., 29 S.W.2d 987; Commercial Casualty Ins. Co. v. Strawn, Tex.Civ.App., 44 S.W.2d 805, writ refused; Hartford Accident & Indemnity Ins. Co. v. Miller, Tex.Civ.App., 5 S.W.2d 181; Gulf Casualty Co. v. Bostick, Tev.Civ.App., 116 S.W.2d 915; Aetna Life Ins. Co. v. Bulgier, Tex.Civ.App., 19 S.W.2d 821, 822; Texas Employers' Ins. Co. v. Teel, Tex.Civ.App., 40 S.W.2d 201; Winters Mutual Aid v. Reddin, Tex.Civ.App., 31 S.W.2d 1103; Fidelity & Casualty Co. v. Joiner, Tex.Civ.App., 178 S.W. 806, 808; Maryland Casualty Co. v. Dicken, Tex.Civ.App., 80 S.W.2d 800, writ dismissed; Texas Employers' Ins. Ass'n v. Wonderley, Tex.Civ.App., 16 S.W.2d 386, writ dismissed; New Amsterdam Casualty Co. v. Crow, Tex.Civ.App., 16 S.W.2d 560; Wright v. Traders, etc., 132 Tex. 172, 123 S.W.2d 314.

Under the holding that jury questions were raised, the judgment will be reversed and the cause remanded.

Reversed and remanded.